IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **KEY INGREDIENT CATERING LLC, et al.,** *Plaintiffs* <br><br> v. <br><br> **WORLD CUP PACKAGING, et al.,** *Defendants* | Case No. 5:19-cv-01178-JDW |

**MEMORANDUM**

Defendants World Cup Packaging, Bob Seay, David Tillery, and Jeff Olson (collectively "World Cup")[1] move to dismiss on the grounds that they are not subject to personal jurisdiction in Pennsylvania and that the Complaint fails to state a claim against them. (ECF Nos. 10, 11.) The Court concludes that it does not have personal jurisdiction over them. However, rather than dismiss the case, the Court will transfer it to the U.S. District Court for the Northern District of Illinois pursuant to 28 U.S.C. § 1631.

**I.     FACTUAL BACKGROUND**

Plaintiff Key Ingredient Catering LLC ("Key Ingredient") describes itself as a "Pennsylvania-based business entity," and Plaintiff Matthew Pivnick is its owner. (Compl. ¶¶ 5-6.) World Cup is an Illinois corporation with a principal place of business in Illinois. (Seay Aff. ¶¶ 3, 7.[2]) Seay, Tillery, and Olson are World Cup employees, none of whom resides in Pennsylvania. (*Id.* ¶¶ 2, 8, 9.) World Cup is not registered to do business in Pennsylvania; it does

---

[1] In its Motion, World Cup claims that its corporate name is SG Acquisition, Inc. Plaintiffs have not disputed or addressed that assertion. For purposes of this decision, the Court includes SG Acquisition, Inc. within the scope of the entities defined as "World Cup."

[2] The Affidavit of Bob Seay ("Seay Aff.") is ECF No. 10-2.

not have a registered agent in Pennsylvania; and it has no property, employees, or bank accounts in Pennsylvania. (*Id.* ¶ 4.) World Cup does not solicit, advertise, or market in Pennsylvania, and it has never attended trade shows in Pennsylvania. (*Id.* ¶ 5.)

Key Ingredient contacted World Cup in Illinois to inquire about the purchase of a machine that could help package Key Ingredient's products. (Compl. ¶ 15.) Following this initial contact, Key Ingredient shipped 350 cups, lids, and film seal to World Cup in Illinois. (*Id.* ¶¶ 15-17, 22.) Olson, an independent sales representative for World Cup in Illinois, prepared and sent a Machine Quote to Key Ingredient in Pennsylvania. (*Id.* ¶ 23; Seay Aff. ¶ 9.) The Machine Quote does not contain a forum selection clause. (Compl. Ex. A.)

Key Ingredient purchased a World Cup machine (the "Machine") by way of an equipment lease, for a total cost of $85,000 with interest. (*Id.* ¶¶ 24-25.) The contract specified that World Cup was to deliver the Machine to Key Ingredient freight-on-board in Illinois. (Compl. Ex. A.) After delivery, Key Ingredient emailed Olson to request a user manual, which Olson apparently sent (*Id.* ¶¶ 30, 45.) In addition, Pivnick spoke with someone from World Cup regarding the requirements for an air compressor that was needed to operate the Machine. (*Id.* ¶ 34.)

Key Ingredient alleges it encountered difficulties once it began using the Machine. (*Id.* ¶¶ 36-43, 47, 51.) In January 2019, World Cup sent a technician to Key Ingredient's facility in Pennsylvania to examine the Machine. (*Id.* ¶ 61.) According to Key Ingredient, the technician identified problems with the machine and promised to issue a full report once he returned to Illinois, but Key Ingredient claims it has not yet received this report. (*Id.* ¶ 62.) Key Ingredient alleges that as a result of these difficulties with the Machine, its reputation with the distributors of its products has suffered. (*Id.* ¶ 52.)

Key Ingredient brings claims against World Cup for products liability, breach of express and implied warranty, breach of contract, and violation of the Unfair Trade Practices and Consumer Protection Law. World Cup has filed a Motion to dismiss for lack of jurisdiction and for failure to state a claim (ECF No. 10), as have Seay, Tillery, and Olson (ECF No. 11). In support of its jurisdictional arguments, World Cup has submitted the Seay Affidavit. Key Ingredient and Pivnick oppose the Motions (ECF No. 13, 14), but they have not submitted any affidavits or other evidence to support their position. Instead, they accept the facts in the Seay Affidavit and rely otherwise on their Complaint.

## II.     LEGAL STANDARD

Motions to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2) require the court to take all of plaintiff's factual allegations as true and to resolve all factual disputes in the plaintiff's favor. *See Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 330 (3d Cir.2009). Once a defendant raises a jurisdictional defense, the burden shifts to the plaintiff to establish that the district court has personal jurisdiction over the nonresident defendant. The plaintiff bears the burden of proving, through "affidavits or other competent evidence," sufficient contacts with the forum state to establish personal jurisdiction. *Id*. Where a court resolves the motion without a hearing, a plaintiff can satisfy that burden by providing evidence sufficient to demonstrate a prima facie case of personal jurisdiction. *See Eurofins Pharma U.S. Holdings v. BioAlliance Pharma SA*, 623 F.3d 147, 155 (3d Cir. 2010). The burden then shifts to the defendant to establish that the exercise of jurisdiction would be unreasonable. *Carteret Sav. Bank v. Shushan,* 954 F.2d 141, 150 (3d Cir.1992)).

### III. ANALYSIS

#### A. World Cup Is Not Subject To Personal Jurisdiction In Pennsylvania

Under Federal Rule of Civil Procedure 4(k), a federal district court may assert personal jurisdiction over a nonresident of the state in which the court sits to the extent authorized by the law of that state. Fed. R. Civ. P. 4(k)(1)(A). Pennsylvania's long arm statute allows the exercise of personal jurisdiction to the full extent permitted by the Constitution. 42 Pa. Cons. Stat. Ann. § 5322(b). Under the Due Process Clause of the Fourteenth Amendment, personal jurisdiction over an out-of-state defendant requires that the defendant have "minimum contacts" with the forum state such that exercising jurisdiction would "not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 319 (1945).

Personal jurisdiction can arise under two distinct theories: general jurisdiction and specific jurisdiction. *See Metcalfe*, 566 F.3d at 334. A court has general jurisdiction over a foreign corporation when that corporation has "continuous and systematic" contacts with the forum state, such that the corporation can be considered "at home" in that state. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). World Cup asserts that it does not maintain any presence in Pennsylvania, let alone one that would make it at home here, and Key Ingredient appears to concede as much. Therefore, the Court will only address whether World Cup's contacts are sufficient to establish specific personal jurisdiction.

A district court has specific jurisdiction over a foreign defendant when (1) a nonresident defendant has "purposefully directed" his activities at a resident of the forum, (2) the injury arises from, or relates to, those activities, and (3) the exercise of jurisdiction otherwise comports with fair play and substantial justice. *D'Jamoos ex rel. Estate of Weinegroff v. Pilatus Aircraft Ltd.*,

566 F.3d 94, 102 (3d Cir. 2009). The Court concludes that none of these factors favors the exercise of jurisdiction over World Cup here.

In a case such as this one arising out of a contractual relationship, a court must consider the "totality of the circumstances" in determining whether minimum contacts exist. *See Remick v. Manfredy*, 238 F.3d 248, 256 (3d Cir. 2001). Specifically, a court should look to the agreement terms, the place and character of prior negotiations, contract performance, contemplated future consequences, and the resolution of post-contract difficulties. *Gen. Elec. Co. v. Deutz AG*, 270 F.3d 144, 150 (3d Cir. 2001). Moreover, the Supreme Court has held that the sale of a product of a manufacturer is not a reasonable basis for jurisdiction where it is "simply an isolated occurrence;" rather, it must "arise[] from the efforts of the manufacturer or distributor to serve directly or indirectly, the market for its product in other States…." *World-Wide Volkswagen*, 444 U.S. at 297. Here, those factors, and the totality of the circumstances more generally, demonstrate that World Cup lacks the necessary contacts.

*First*, the negotiations leading to the sale agreement do not establish World Cup's minimum contacts with Pennsylvania. World Cup sent limited communications to Pennsylvania in response to Key Ingredient's initial contact to World Cup in Illinois, including a "Machine Quote." (Compl. ¶ 15.) That Quote formed the basis for the contract and expresses World Cup's intent to deliver products in Illinois. It therefore does not establish World Cup's contact with Pennsylvania. *See Strick Corp. v. A. J. F. Warehouse Distributors, Inc.*, 532 F. Supp. 951, 959 (E.D. Pa. 1982) ("[C]ourts should look at whether the non-resident defendant initiated the deal, attempted to alter the terms of the contract, or conducted significant negotiations with the plaintiff."). The facts presented do not demonstrate that World Cup initiated any other

precontractual communications that it directed into Pennsylvania. Indeed, at most, the facts suggest any other communications that World Cup directed to Key Ingredient were minor, at best.

*Second*, the existence and terms of the contract do not establish the requisite contacts between World Cup and Pennsylvania. As a threshold matter, a contract can provide the basis for personal jurisdiction, but a contract alone does not automatically establish sufficient minimum contacts in the opposing party's home forum. *See Grant Entm't Group, Ltd. v. Star Media Sales, Inc.*, 988 F.2d 476, 482 (3d Cir. 1993); *Mendelsohn, Drucker & Assocs. v. Titan Atlas Mfg., Inc.*, 885 F. Supp.2d 767, 779 (E.D. Pa. 2012) ("contracting with a forum citizen does not automatically establish personal jurisdiction[.]" ). Rather, courts will examine whether there was the intention "to establish a common venture extending over a substantial period of time[.]" *Gen. Elec.*, 270 F.3d at 151.

The contract in question here covers a single transaction for the delivery of a single piece of equipment. Its terms demonstrate that World Cup intended to perform in Illinois. All manufacturing activity took place there, World Cup tested the Machine there, and World Cup delivered the Machine in Illinois. The contract also "encouraged" Key Ingredient's presence in Illinois for operations and maintenance testing as well as "final machine approval" prior to shipment from Illinois. (Compl. Ex. A.) It provided for repairs and replacements to be addressed in Illinois. Indeed, Plaintiffs allege that World Cup refused to include in the contract a provision obligating World Cup to provide on-site training or to set up the equipment in Pennsylvania. (Compl. ¶ 31.) These facts do not demonstrate World Cup's contacts with Pennsylvania. To the contrary, they demonstrate World Cup's desire to stay out of Pennsylvania and to limit itself to Illinois. *See Rotondo Weinreich Enter., Inc. v. Rock City Mech., Inc.*, 2005 WL 119571, at *6

(E.D. Pa. Jan. 19, 2005) (no specific jurisdiction existed over the defendant because the contract "did not anticipate that any part of its performance would take place in Pennsylvania").

Furthermore, the contract was a single deal between the companies. It was neither the beginning of nor the continuation of an ongoing relationship. *See Rotondo Weinreich Enter., Inc. v. Rock City Mech., Inc.*, 2005 WL 119571, at *4 (E.D. Pa. Jan. 19, 2005) (finding it "significant that the parties did not intend to establish a common venture extending over a substantial period of time," where the contract was for a one-time project that lasted less than a year). Thus, nothing about the terms of the contract suggests that World Cup intended to direct its activities into Pennsylvania.

*Third*, and finally, World Cup's post-contractual contacts with Pennsylvania do not constitute sufficient contacts to invoke specific jurisdiction, even in light of the existing contract and communications. After the contract was formed, World Cup sent a technician to Pennsylvania to visit Key Ingredient on one occasion. That single visit, however, is not enough to create the requisite minimum contacts. *See Langsam-Borenstein P'ship by Langsam v. NOC Enterprises, Inc.*, 137 F.R.D. 217 (E.D. Pa. 1990) (one visit to the forum by an out-of-state defendant and an unspecified number of telephone calls and fax transmissions were not enough to establish personal jurisdiction). In addition, shortly after taking possession of the Machine, Key Ingredient requested and received from World Cup a copy of a user manual for the Machine and inquired about the type of air compressor it would need to operate the Machine. However, "informational communications in furtherance of [a] contract do not establish the purposeful activity necessary for a valid assertion of personal jurisdiction …." *Sunbelt Corp. v. Noble, Denton & Assocs.*, 5 F.3d 28, 32 (3d Cir. 1993). Thus, these communications—providing a user manual and answering an inquiry about the type of air compressor—do not contribute to the requisite contacts for specific jurisdiction.

In sum, the Court concludes that World Cup's limited contacts with Pennsylvania, taken together, do not rise to the level of activity that is directed at the forum. Even if they did, the exercise of personal jurisdiction over World Cup would not comport with fair play and substantial justice because the facts demonstrate that World Cup made concerted efforts to stay out of Pennsylvania and to limit its presence and performance to Illinois, whereas Key Ingredient made a conscious effort to go outside of Pennsylvania to find a company that could manufacture the Machine for it. Accordingly, the Court does not have personal jurisdiction over World Cup.

B. **Transfer Under 28 U.S.C. § 1631 Is Appropriate**

Under 28 U.S.C. § 1631, when a court determines that there is a "want of jurisdiction" in a civil case before it, "the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court" in which the action could have been brought at the time it was filed. 28 U.S.C. § 1631. The Court has the power to transfer a case under Section 1631 *sua sponte. See TorcUP, Inc. v. Aztec Bolting Svcs., Inc.*, -- F. Supp.3d --, 2019 WL 3022347, at *6 (E.D. Pa. July 9, 2019); *Steinfield v. EmPG Intern. LLC*, 97 F. Supp.3d 606, 616 (E.D. Pa. 2015). The pleadings and affidavits submitted to the Court establish that Key Ingredient could have brought this case in the Northern District of Illinois, where World Cup resides and where the events at issue took place. The Court concludes that it is in the interest of justice to transfer the case, rather than dismiss it. Therefore, the Court will transfer the case to the Northern District of Illinois.

IV. **CONCLUSION**

For the reasons set forth above, the Court will transfer this case to the U.S. District Court for the Northern District of Illinois. An appropriate Order will follow.

**BY THE COURT:**

*/s/ Joshua D. Wolson*
JOSHUA D. WOLSON, J.